UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANCIS R.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C20-850-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in assessing four medical opinions. (Dkt. # 25 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1959, has a high school diploma, and previously owned and operated a property maintenance business. AR at 243. Plaintiff was last gainfully employed in June 2013. *Id.* at 242. In April 2014, Plaintiff applied for benefits, alleging disability as of June 1, 2013. AR at 214-24. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 142-45, 148-53. After the ALJ conducted hearings in

ORDER - 1

September 2015 and January 2016 (*id*. at 33-81), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 11-27.

The Appeals Council denied Plaintiff's request for review (AR at 2-7), and the U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded for reconsideration of four medical opinions. *Id*. at 848-61. A different ALJ held a hearing in December 2019 (*id*. at 793-816), and subsequently issued a decision finding Plaintiff not disabled during the adjudicated period running from June 1, 2013, to July 8, 2016[1] (the day before he was found disabled via a subsequent application for benefits). *Id*. at 765-84.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since his alleged onset date.

Step two: During the adjudicated period, Plaintiff had the following severe impairments: peripheral neuropathy, obstructive sleep apnea, depressive disorder, anxiety-related disorder, personality disorder, history of trichotillomania, and substance use disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity: During the adjudicated period, Plaintiff could perform medium work with additional limitations: he could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. He could not operate foot controls. He could occasionally balance, stoop, kneel, crouch, and crawl. He could frequently handle and finger. He would need to avoid concentrated exposure to extreme cold, heat, excessive vibration, and workplace hazards (such as working with dangerous machinery and at unprotected heights). He could perform simple, routine tasks, in a routine work environment, with simple work-related decisions. He could have occasional superficial interaction with co-workers, supervisors, and the public, but could not engage in teamwork with co-workers, supervisory/problem-solving responsibility, or processing of complaints from the general public.

---

[1] Although the ALJ's decision refers to both July 8, 2016, and July 8, 2018, as the date Plaintiff was found disabled, the record confirms that the correct date is in 2016. *See* AR at 882.

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step four: During the adjudicated period, Plaintiff could not perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed during the adjudicated period, Plaintiff was not disabled during that period.

AR at 765-84.

Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

As noted above, this case was previously remanded with instructions to reconsider four medical opinions. *See* AR at 848-61. Plaintiff now argues that on remand the ALJ reiterated the same reasons to discount the medical opinions that were previously found insufficient, and that any additional reasons provided were also insufficient. (Dkt. # 25 at 3-18.) The Court will address each the ALJ's assessment of each disputed medical opinion in turn.

### A. Legal Standards[4]

Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

### B. Robert Jacobson, M.D.

Dr. Jacobson, Plaintiff's family doctor, wrote a letter in support of Plaintiff's disability application and completed a form opinion in August 2015, describing disabling mental and physical limitations. AR at 545-54. The ALJ gave little weight to Dr. Jacobson's opinion, finding it unsupported and inconsistent with the record. *Id*. at 777-78. Specifically, the ALJ found that Dr. Jacobson's opinion was based in part on conditions that the ALJ found not severe, and that to the extent he referenced neuropathy, the normal sensory and physical findings in Plaintiff's treatment record were inconsistent. *Id*. at 778. The ALJ also found Dr. Jacobson's opinion

---

[4] Because the disability applications at issue here were filed before March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 and § 416.927 apply to the ALJ's consideration of medical opinions.

regarding Plaintiff's memory loss to be inconsistent with objective memory testing in the record, and that the treatment notes documenting a focus on situational stressors contradicted Dr. Jacobson's findings regarding disabling limitations caused by depression or anxiety. *Id*. Next, the ALJ found that Dr. Jacobson's opinions relied in part on Plaintiff's self-report, which the ALJ found to be unreliable. *Id*. Lastly, the ALJ noted that to the extent that Dr. Jacobson opined that Plaintiff was unemployable or unable to work, such an opinion infringes on an issue reserved to the Commissioner. *Id*.

Plaintiff argues that none of these reasons is specific and legitimate, but the Court disagrees. The ALJ detailed the evidence regarding Plaintiff's allegations of neuropathy, finding that the objective evidence contradicted his allegations of disabling balance and mobility limitations (a finding not challenged by Plaintiff), and the ALJ referred to this evidence in finding Dr. Jacobson's limitations based on neuropathy to be inconsistent with the record. AR at 773, 778. The ALJ did not err in finding the objective evidence of Plaintiff's normal sensory testing and other normal functioning to be inconsistent with Dr. Jacobson's opinion that Plaintiff's lack of sensation in his feet would cause disabling limitations. *See id*. at 545, 548-49.

Furthermore, the ALJ pointed to evidence of Plaintiff's memory testing (AR at 775, 778), that contradicts Dr. Jacobson's opinion that Plaintiff has significant and disabling memory loss (*id*. at 545, 552). Although Plaintiff argues that his memory issues fluctuated based on his degree of fatigue (dkt. # 25 at 16-17), he has not shown that the ALJ erred in finding that the objective memory testing (*e.g.*, AR at 472, 752) nonetheless failed to show disabling memory deficits and therefore reasonably contradicted Dr. Jacobson's opinion. Furthermore, even if Plaintiff was fatigued during the adjudicated period, the ALJ's decision identifies substantial evidence showing that Plaintiff retained normal cognition and was fully alert during appointments. *See id*.

at 774 (citing *id*. at 490, 503, 578, 589, 623-24, 626, 628, 630, 632, 644, 646, 648, 656, 665, 672, 752, 1268, 1270, 1278, 1281, 1283, 1285, 1287, 1296, 1298, 1307, 1309, 1318, 1321), 778.

These inconsistencies between the medical record and Dr. Jacobson's opinion constitute specific, legitimate grounds to discount Dr. Jacobson's opinion, and Plaintiff has not shown that the ALJ erred in doing so. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

### C.  David Jarvis, M.D.

Dr. Jarvis examined Plaintiff in June 2014 and wrote a narrative report describing moderate mental limitations "increase[d]" to "severe" by Plaintiff's "recent cognitive difficulties, with agitation[.]" AR at 466-73. The ALJ gave partial weight to Dr. Jarvis's report, discounting his opinion that Plaintiff's limitations had become severe due to cognitive difficulties, with agitation, because these difficulties were not observed during Dr. Jarvis's examination and not documented in the overall record. *Id*. at 779.

The ALJ's reasoning is supported by substantial evidence. Dr. Jarvis himself noted that Plaintiff "doesn't do too badly on the cognitive testing today while relaxed but does poorly when he feels stressed." AR at 473. But, as noted by the ALJ, other cognitive testing was also largely normal. *See id*. at 752. Plaintiff has not pointed to evidence in the record documenting the existence of severe cognitive difficulties, with agitation, which was referenced by Dr. Jarvis, and thus has not shown that the ALJ erred in discounting this portion of Dr. Jarvis's opinion as unsupported and inconsistent with the record. *See Tommasetti*, 533 F.3d at 1041; *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

### D. Holly Petaja, Ph.D.

Dr. Petaja examined Plaintiff in December 2014 and completed a DSHS opinion describing mostly moderate limitations and some marked limitations. AR at 537-44. The ALJ gave significant weight to the portion of Dr. Petaja's opinion indicating that Plaintiff could perform short, simple instructions, and that he had moderate limitations in other categories. *Id*. at 778. The ALJ discounted the marked limitations identified by Dr. Petaja, finding that part of the opinion to be inconsistent with the many normal mental status examination findings in Dr. Petaja's report and the remainder of the record. *Id*. at 779. The ALJ acknowledged that some of Dr. Petaja's mental status examination findings were not entirely normal but found that the degree of limitation suggested in the clinical findings was not as severe as Dr. Petaja's conclusions indicated. *Id*.

The ALJ went on to find the marked limitations mentioned in Dr. Petaja's opinion to be inconsistent with Plaintiff's mental health treatment notes (which focused on managing Plaintiff's situational stressors such as his ex-wife's terminal illness, housing concerns, and his benefits application), as well as other normal findings in the record and Plaintiff's ability to not only manage his own self-care but also care for his ex-wife with cancer. AR at 779-80. The ALJ also noted that Dr. Petaja did not have the opportunity to review any records before rendering her opinion, and thus was not aware of any inconsistent evidence in other parts of the record. *Id*. at 780.

Plaintiff contends that the ALJ's reasoning was found erroneous in a previous court remand order. Indeed, the previous court found that the ALJ erred in discounting Dr. Petaja's opinion because it was (1) undermined by her failure to review records and her status as a one-time examiner, (2) undermined by her reliance on Plaintiff's unreliable self-report, (3)

inconsistent with Plaintiff's minimal daily activities, and (4) unsupported by the overall record. AR at 856-59. Some of these erroneous reasons overlap with the ALJ's reasoning in the current decision, but the Court finds that in the current decision, the ALJ reasonably found Dr. Petaja's conclusions to be inconsistent with her clinical findings, and expanded upon the reasoning provided in the vacated ALJ decision. Unlike in the previous ALJ decision (*id*. at 24), this ALJ acknowledged both Dr. Petaja's normal *and* abnormal findings, and reasonably found that although Dr. Petaja noted some abnormalities, those abnormalities did not support the marked limitations she indicated. *Id*. at 779. The ALJ also identified specific evidence in the record that she found to be inconsistent with Dr. Petaja's opinion, which was not referenced in the ALJ's prior discounting of Dr. Petaja's opinion, such as mental health treatment notes documenting a focus on situational stressors, Plaintiff's intact social functioning, and many normal mental status examination findings. *Id*. at 779-80.

The Court finds that the ALJ reasonably weighed the evidence supporting Dr. Petaja's opinion, which is a function within the province of the ALJ. *See Bayliss*, 427 F.3d at 1216 (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province"). Because Plaintiff has not shown that his preferred interpretation of the evidence is the only reasonable interpretation (dkt. # 25 at 13-14), the Court finds that the ALJ provided a legally sufficient basis to discount Dr. Petaja's opinion.

E.  **Margaret Cunningham, Ph.D.**

In January 2014, Dr. Cunningham performed a psychological examination of Plaintiff and wrote a narrative report describing many marked or severe mental symptoms and limitations. AR at 525-36. The ALJ gave little weight to Dr. Cunningham's opinion, finding that Plaintiff's

presentation to Dr. Cunningham was not typical of his presentation on other occasions, and thus although Dr. Cunningham's opinion may be supported by her findings, those findings were not representative of Plaintiff's functioning throughout the adjudicated period. *Id*. at 779. Earlier in the decision, the ALJ had discussed Plaintiff's failure to accurately describe his alcohol use to Dr. Cunningham, as well as Plaintiff's disclosure that he had used cocaine the week before the examination. *Id*. at 776.

The ALJ also reiterated the same reasoning provided with respect to Dr. Petaja's opinion, finding Dr. Cunningham's opinion to be inconsistent with Plaintiff's mental health treatment notes (which focused on managing Plaintiff's situational stressors such as his ex-wife's terminal illness, housing concerns, and his benefits application), as well as other normal findings in the record and Plaintiff's ability to not only manage his own self-care but also care for his ex-wife with cancer. AR at 779-80. The ALJ also noted that Dr. Cunningham did not have the opportunity to review any records before rendering her opinion, and thus was not aware of any inconsistent evidence in other parts of the record. *Id*. at 780.

The Court finds that the ALJ did not err in discounting Dr. Cunningham's opinion in light of discrepancies between Plaintiff's presentation during her examination as compared with other appointments in the record. Dr. Cunningham noted that at the time of her examination, Plaintiff was newly separated from his wife, living in his truck, and using crack, and Dr. Cunningham entered mostly abnormal mental status examination findings. AR at 530. The ALJ identified other evidence in the record showing that when Plaintiff's situational stressors stabilized, his functional limitations were not disabling. *See id*. at 774-77. In light of this evidence, the ALJ did not err in finding that Plaintiff's presentation to Dr. Cunningham was not typical of his presentation throughout the adjudicated period. This reason was not provided in the prior ALJ

decision, and constitutes a specific, legitimate reason to discount Dr. Cunningham's opinion. *See Tommasetti*, 533 F.3d at 1041.

Because the Court finds that the ALJ provided at least one specific, legitimate reason identified herein to discount each of the disputed opinions, any error in other lines of reasoning is harmless. The Court therefore finds Plaintiff has not met his burden to show harmful legal error in the ALJ's assessment of the opinions of Drs. Jacobson, Jarvis, Petaja, and Cunningham.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**, and this case is **DISMISSED** with prejudice.

Dated this 6th day of July, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge